on behalf of Petitioner, James Milne. We've shown in the briefs that Petitioner has presented a colorful claim of ineffective assistance of substitute counsel, and where the constitutional violation starts is that Mr. Milne didn't meet substitute counsel until the actual hearing on his motion to withdraw the plea. And that's in his affidavit at the Supreme Court. I wanted to show you this excerpt from the record, excerpt from record 85, that the attorney appointed Mr. Alan Sanquez, and the Court might recall that the trial court appointed separate counsel to hear and handle Mr. Milne's motion in State trial court to withdraw his guilty plea and that was Mr. Sanquez. Paragraph 14 of his declaration, Mr. Milne says, the attorney appointed Mr. Alan Sanquez to represent me at the motion to withdraw hearing was never, had never spoken to me prior to entering the court on the same day of the hearing. In fact, I never knew who the attorney was until I appeared in court on the date set for the hearing. And then the constitutional violation unfolds in that all Mr. Sanquez did in, in his appointment on the record, in his appointment to represent Milne, Mr. Milne, in the withdrawal, motion to withdraw his plea, was submit a boilerplate motion containing Mr. Milne's uncorroborated one-page affidavit stating that Mr. Sanquez had not spoken to me prior to entering the court on the same day of the hearing. And that he had a conflict, stating the two points that we're raising here, that he had a conflict with trial defense counsel, that actually trial defense counsel made the, made the threat that, that if he doesn't plead guilty, he might have to testify against him. And then also that, you know, I was on, that Mr. Milne's declaration states that he was on psychiatric medication and did not understand, therefore, the nature of his, of his plea. And all the newly appointed counsel did was show up at court without seeing his client first prior to the hearing and present a motion with a one-page uncorroborated statement by his client. And the trial courts, that's not going to be sufficient to withstand constitutional muster for effective assistance of counsel, because there was available evidence to substantiate Mr. Milne's claim in his affidavit that he was on psychiatric medication and that he, that caused him to not understand the nature of his plea. And also, the serious allegation that Mr. Milne makes against his counsel, his trial counsel, that he threatened to testify against him if he didn't plead guilty or if he went to trial. And the way that the court of, the California Court of Appeal handled that allegation in the trial court is illogical. Because what the court of appeal said is that, well, there's an allegation that the attorney, you know, there must be some, there must have been some potential for perjury here by the client, because that's often when this, this issue arises, when the attorney is threatening maybe to testify or might have to testify against the client, there might be. So the court of appeal says, well, in a footnote in the opinion, that this, there's some suggestion that that implies that there, that, you know, maybe Mr. Milne was going to commit perjury and that's why his counsel was telling him prior to the plea, look, you go to trial, I'm, I'm going to have to withdraw and I might have to testify against you in trial. Well, the, the problem, one, is that the court of appeals speculate. The conclusion that this might have been an issue of perjury by Mr., that, is, is complete speculation. The other thing is, and this is the point, in no circumstance may trial counsel at that point threaten to testify against the client in court. He might withdraw, move to withdraw. He might simply just have to put his client up on the stand and let the client tell his or her story, and therefore not, if the client's, his or her, the attorney's opinion can be perjury, not further than perjury by, by questioning. But in no circumstance can, can the attorney tell the client, you need to plead guilty here. You're not going to trial because, as Mr. Mollay says, what his attorney says, you're, you know, this is a waste of taxpayers' money. You're not going to trial in this case, and I'm, and I might have to, if you, if you insist on going to trial, I might have to move to be relieved and I might have to testify against you. Well, in no case would he, might have to testify against his client. I mean, the only conceivable type of situation where the attorney is actually going to have to get up on the witness stand and, and subsequently, you know, testify against the client might be a situation where there's an imminent, imminent threat of bodily injury, future bodily injury or death to somebody, and the client might have, the attorney might have a duty under that circumstance, I believe, in coming forward with, hey, this client might kill somebody tomorrow. But we don't know. We don't know because there's no evidentiary record. Right. And there's no, and that's the problem. And that, we, we feel, and with respect to the court, remands an evidentiary hearing. And we feel that the Petitioner has diligently pursued his claims and tried to develop those claims in State court with the, well, first, in, in the direct appeal that his appointed counsel had that responsibility to develop the record and didn't do it. And therefore, through no fault of his own, he wasn't precluded from developing the record there, and that he's therefore been diligent. Because the Respondent's making the argument that, that under AEDP, that the court is precluded from, you know, he's not exercised diligence, and therefore, this Court should not remand for an evidentiary hearing. I absolutely agree with Your Honor that, and would respectfully request the Court remand for an evidentiary hearing to develop the facts, because Mr. Milne, in his affidavit, is very specific about what his attorney, the original attorney, told him, and how he threatened him, and, and really jawboned him into pleading guilty. He's very specific in, in the details on paragraph 11 of Exeter Record 84 about what the attorney told him, and how it's going to waste taxpayers' money, and then what the, and the, the new substitute counsel never, there's no evidence that he ever interviewed trial counsel. He didn't put trial counsel's affidavit forward in support of the motion. And, you know, the reason might have been that there wasn't any truth to that. But the record belies that, because Mr. Milne is very specific and detailed in paragraph 11 here on, on his affidavit as to what, what his trial counsel said, what Mr. Milne said in response in a conversation back and forth that's very detailed, that's very detailed, suggesting that it's, it is perhaps true. So it's disturbing that substitute counsel would present a Barler-Clark motion with simply a, a one-page affidavit of his client with no other substantiating facts when those facts were available. And so I do believe that, that this Court should remand for an interview. And I'll submit and reserve the remainder of my time. Thank you. Good morning, Your Honors. Gary Hanley on behalf of the Respondents. Good morning. I would like to first point out that the affidavit the Petitioner's counsel refers to is something that was filed in 2002 after it had been through the State Court. That evidence was not presented before the State Court. He failed to develop that. There's no reason why he couldn't have presented that affidavit about the attorney making those kind of statements to the State Court, because it was clearly known to him at that time. The State habeas proceedings do not present a habeas affidavit from him that say that I felt pressured to do this because he told me that he was going to withdraw. All he says in the State habeas was the attorney told me that he might have to withdraw because he might have to testify against me. Now, are you talking about Lynn Sanquist, the attorney Sanquist? I'm talking about the first attorney. No, Your Honor. O'Meara? O'Meara, yes. And was there not an evidentiary hearing in the State court or in the Federal court to bring the attorneys in and have them testify? Well, there was no documents supplied by Petitioner in his State proceedings to submit. There was no other – the answer to the question is there was no evidentiary hearing. That's correct, Your Honor. And the reason why there was no evidentiary hearing was because there was, even if the State court presumed everything that he said in State court, the Petitioner said in State court, to be true, he failed to state a claim. That did not – once he states that, then there's no requirement for the State court to issue an OSC for an evidentiary hearing. And this Court has held over and over again, I think, that a denial by the California Supreme Court, a summary denial, is a denial on the merits. And procedurally, that means that the State – the State Supreme Court has assumed to have looked at it, assumed that what was true was said – was said was true, and they still denied the motion, the petition, on those grounds. So when we look at what happened in the State level, there was no evidence presented to them that could not have been presented at that State level. He presents new evidence at the Federal level, after he files his petition in district court, that could have been presented at the State level, and it wasn't. Let's take what he presented before the State. I mean, he does say that before trial, my attorney told me he was going to put in a motion to relieve himself as my counsel because he might have to testify against me. That's correct. Isn't that a sufficient basis to warn an evidentiary hearing on? On that bold statement alone, no, I don't believe so, Your Honor, because what he's saying is my attorney is telling me he's holding up his breach of duty to me. He's telling me that, you know, I may have to testify against you. There may be something that's going to be presented that might breach my ethical duties. There may be something here that will require me to testify against you. I am informing you that that may be a consequence. There's nothing in that statement that says he used that as a pressure against me to make me plead guilty. Well, later on he says, I was pressured into signing whatever it was I signed. I mean, I realize it's not a very artful statement, but to me, the two seem logically connected. You think not. Why? Well, I don't think he says he felt pressured, but then again, that's a conclusory statement. He doesn't say why he felt pressured. He makes these two statements. They're disjointed. Well, okay. Let's take it apart from the other. Let's assume hypothetically that a defendant had said clearly, I was pressured into signing this deal because my attorney threatened that he would testify against me at trial. That would be enough to get an evidentiary hearing, wouldn't you agree? I might agree with that one, Your Honor. Okay. And so then the question is whether or not this declaration comes close enough to that to require an evidentiary hearing. And what we're missing here is the fact that the client has failed to show, excuse me, the Petitioner has failed to show in this matter is, first of all, he makes this alleged statement. He doesn't provide anything to the State court either in any of his habeas proceedings in the State court from the attorney that says, I made that statement, and here's why I made it. That was perfectly available to him. All we have is this alleged statement. And this credibility is not there. But in a case of conflict of interest, that evidence would normally not be available to the Petitioner, would it? At the State habeas proceeding, it would be. No, I mean, you can't he when people accuse their attorneys of an ethical violation, I find it rare that the attorney says, oh, yeah, I did. I committed an ethical violation, and you should let him out. I mean, usually they deny it. So the failure to provide that statement doesn't seem to me to be fatal. I realize that what you're faulting him for is not presenting additional evidence. I understand that, but I'm saying at least it doesn't seem to me to be too, in a conflict case, that it wouldn't be too unusual for the attorney to see an absence of a declaration of counsel saying he committed an ethical violation. But I think what the record fails to show, and there's no case law to support it, that when an attorney makes that kind of a statement, either because he has an ethical duty or there's some other reason why he needs to get off the case, that that provides a conflict of interest claim. Well, testifying against your client would certainly be a conflict of interest. Well, but again, the record's ambiguous as to why he might have to testify against that. Right. That's hence my point. And again, he doesn't say that there's a conflict of interest claim. I mean, this may not pan out at all, and it's unlikely to, in my estimation. But it seems to me he may have enough to get an evidentiary hearing. Well, again, Your Honor, even when you're on a statement, it may not pan out. It seems like it's unlikely to. It's enough to deny the evidentiary hearing, because the evidence is there. No, because the standard is if the statement, if proven, would be enough. And I think if he proves that his attorney says that, you know, threatened to testify against him unless he took the deal, that might entail him to relief. What I was speculating, saying it might not pan out, is after a full evidentiary hearing, there certainly might be a ruling against him that might not credit his statement. We don't know. We don't have it in front of us. Well, I think what you have to look at is the Petitioner's credibility to begin with, because he says that I didn't know what I was doing at the change of plea. But you look at his statement to the probation officer. I signed that change of plea form because I did it for my kids. I was the one that grabbed the money out of the register. He makes a clear, concise statement as to what happened at the change of plea and why he made his change of plea. So we've got two conflicting statements from this Petitioner. Also, he tries to rely on this medical evidence to show that he was under the influence of medication, when it absolutely does not show, or actually shows he was not under any medication at the time of change of plea. Those records that he supplies this Court clearly show that he didn't take any medication or prescribe any medication until November 8th of 1998. So because in his State Habeas, if you notice, he says on 2-15 of 98 and a follow-up on 2-23 of 98, I was the – I saw a psychiatrist and I was given this medication. Well, he clearly mistakes the date because it wasn't until 2-15-99 that it said. So we have to look at what the courts had before them to determine whether or not his statements have any credibility in order to grant. I mean, before we can get to the fact that he should get an evidentiary hearing, is it going to pan out? Has he provided any additional facts to this Court that would require an evidentiary hearing? What would it reveal? He has not said, other than I will get up on the stand and testify to this, he has not said I can bring in an attorney, I can bring in another defendant, one of my three co-defendants that was with me, to testify that this was what was said. He has not provided any additional facts to support his claim. And so we go back to an evidentiary hearing. All we have is his statement again, which was reviewed by the district court and not given much weight because they looked at the reasonableness of the State court's actions, decided it was reasonable, and once they got to that point, there was no need for an evidentiary hearing. I'm a little confused. Who was the attorney at the Federal habeas procedure, Mr. Sanquist? No, Mr. Sanquist was the only attorney at the withdrawal plea motion. I believe he may have substituted in for the sentencing hearing, but after that, he was off the case. Right. But who represented the Petitioner at the Federal habeas? In the district court? I don't know if he was represented by an attorney at that point or not. He may have been pro se. Well, then the court must have intervened and appointed Mr. Lathrop to appeal. I believe once the certificate of appealability, I think. I'm not sure on the procedure on it. I think that's right. But I think once the certificate of appealability was granted by this court, Mr. Lathrop was appointed. And so you feel that he didn't have counsel at the district court hearing? He may not have been represented. I believe he was not. I believe he was pro se. That would be unusual for the district court not to appoint somebody. Your Honor, I can't speak to that because I don't know what preceded those hearings. Well, it depends, of course, what the district court did as to what we can do. Well, I believe what you should look at, did the State court act reasonably with the evidence they had before it? And, yes, it did. And thus, an evidentiary hearing is not – should not be granted in this matter. Yeah, there was no evidentiary hearing. Do you know whether one was requested? Well, any time somebody files a habeas petition, I would imagine in the State court they would be asking for it in order to show cause, which would result in an evidentiary hearing. And since the State courts found that the Petitioner didn't lay a sufficient claim, even assuming the facts are to be true as presented before it, it impliedly denied the evidentiary hearing. Well, up here, Mr. Lathrop's not asking for an evidentiary hearing, is he? I believe he was requesting a remand for an evidentiary hearing. A remand? Yes. I believe that was his statement, Your Honor. Okay. Thank you, counsel. Thank you, Your Honor. I'll submit on behalf of the Petitioner, unless there are any questions by the Court. It's been so long since I looked at this, but are you requesting a remand for an evidentiary hearing? Yes, Your Honor. And to the district court? To the district. What's the purpose of the remand? The purpose to the district court, yes, Your Honor, for an evidentiary hearing to develop – to further develop the facts underlying Petitioner's claim that his trial counsel, that the trial court substituted in for him. That would be Sanquist? Yes. Providing an effective assistance to the trial defense counsel in failing to present available evidence, both on the conflict of interest that he had with his trial counsel, the original trial counsel. O'Meara. Yes. And on the failure to present the evidence of psychiatric. And O'Meara is the one that should have – should have attempted to have the plea withdrawn? No, Your Honor, that was Sanquist, because what the trial court did in the state court is the court appointed a new counsel for Petitioner to bring the motion to set aside the plea, and that was Mr. Sanquist that the court appointed. And the issues here, we're asking the court to find that the – that Mr. Sanquist rendered ineffective assistance to counsel in connection with his work in representing my client, Mr. Milne, in trial – in the trial court in connection with his work. So who represented him at the district court? Nobody did. He filed his – nobody did. He filed his Federal habeas petition. He was in pro se, and he was unrepresented by counsel throughout the Federal district court proceedings. And then when this court granted a certificate of probable cause on the two issues, it appointed counsel, and I was the one that it appointed. I can't believe that a district court would not appoint on its own motion a counsel. I'm surprised as well, especially in – it's not uncommon for the district court not to do that. It's routinely not done. But in a case where you've got a conflict of interest, a claim of conflict of interest with an attorney, and the evidence that needs to be presented is the testimony of, you know, have the subpoena power and bring the – have the testimony or an affidavit of the trial counsel as to what trial counsel said to his client, and whether Mr. Milne's claim is – is substantiated. You're talking about the state court trial counsel. Right. But I believe that – I believe the Federal district court should have appointed counsel to assist Mr. Milne in – in presenting his claim of an – that his trial counsel was ineffective. You've got a lot of hoops to jump through in the district court if it gets remanded. You've got to show that it wasn't a strategic decision on the part of Sanderson, and you've got to then show that there was some truth to the underlying allegation and that it would have made a difference. And I appreciate what the Court's comment. You don't know what's going to happen on a remand, and it may very well, but it doesn't pan out. On the other hand, the – if you read the affidavit that he submitted in the district court as to what was said between his original counsel and him, and it's pretty detailed. I mean, it doesn't look like it was fabricated. It wasn't like my counsel said, you know, just coerced me. He said, you know, my counsel said, you know, we're not going to waste taxpayers' dollars here. And, you know, I'm going to – if you persist in a plea – in wanting a jury trial, I'm going to move – might have to move to withdraw and might have to testify against you. But under no circumstance – I think it's – Your Honor, I appreciate the comments. Under no circumstance would that counsel have to testify against Mr. Milne. I mean, under no circumstance under these facts. He might withdraw. He might have to put him up there on the stand and not just let him say his story. But I know – I can't conceive under any circumstance where he could testify against his client. They would have to do it. Roberts, I mean, that's the juncture. Now, of course, if you get a hearing, you can subpoena him and see what he has to say. All right. I think we would have to do that. Because he's waived his right to attorney-client privilege at this point with habeas. Right. Thank you, counsel. Thank you very much, Your Honor. Case just argued will be submitted. Court will stand in recess for the day. Thank you both very much. All rise. This court's recess is adjourned.
judges: Lay , Reinhardt, Thomas